[Sac. No. 1947. Department One.—August 3, 1912.]

JAMES MEGARRY, Appellant, v. MARY MEGARRY, ARTHUR MEGARRY, LETITIA MEGARRY, and MARY MEGARRY and LETITIA MEGARRY, as Executrices of the Last Will and Testament of Walter Megarry, Deceased, Appellants.

QUIETING TITLE TO GROCERY BUSINESS—UNSUSTAINED FINDING OF SOLE OWNERSHIP—TRANSFER IN TRUST FOR FAMILY OF TRANSFERER.— In an action to quiet title to a certain grocery business, a finding, in accord with the allegations of the complaint, that the plaintiff is the sole owner of the business, is held not to be supported by the evidence, which shows that the plaintiff acquired the business by a transfer from his father, its former owner, in trust for the benefit of the members of his family, including the plaintiff and the defendants, and that he had been merely managing the business as such trustee for their benefit.

CLXIII Cal.—25

APPEAL from a judgment of the Superior Court of Solano County and from an order refusing a new trial. A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

W. U. Goodman, and Leon Samuel, for Appellants.

L. G. Harrier, and W. T. O'Donnell, for Respondent.

ANGELLOTTI, J.—By his complaint in this action, plaintiff sought a decree adjudging that he is the sole owner of a certain grocery business in the city of Vallejo, Solano County, "conducted at No. 310 Georgia Street, under the name of James Megarry & Company, (the term 'business' including the stock in trade, money on hand, accounts and good will thereof)," and perpetually restraining defendants from interfering therewith "by claiming or asserting any control or dominion over the same, from taking possession of, or attempting to take possession of said property or any part thereof, or from making any claim of ownership therein adverse to this plaintiff." The complaint contained the allegations usual in complaints to quiet title to real property, and alleged that the plaintiff was in the sole possession of said business. The defendants by their answer denied various allegations of the complaint, including those relating to the ownership of the property. The issues so made were tried, and the trial court found in accord with the allegations of the complaint and gave judgment as prayed therein. This is an appeal by defendants from the judgment and from an order denying their motion for a new trial.

Passing certain claims apparently made for the first time on the oral argument in this court, we will consider the claim made in the briefs to the effect that there is not sufficient support in the evidence for the conclusion of the trial court that plaintiff is the sole owner of the property in question.

The defendants are Arthur Megarry, Mary Megarry, and Letitia Megarry, sole surviving brother and sisters of plaintiff, and Mary Megarry and Letitia Megarry, as executrices of the last will of Walter Megarry, a deceased brother of plaintiff. The persons named, including plaintiff, were children

of William Megarry, who died March 15th or 17th, 1891, and his wife Elizabeth Megarry, who died in the year 1901. The father left surviving him, in addition to the children already named, two other sons, John and William. At the time of his death the children were of the following ages, viz.: plaintiff 22 years, John 19, William 15, Walter 13, Mary 11, Arthur 9, and Letitia 7.

The father was then engaged in the grocery business, under the name of William Megarry, and also owned some land, lots 8 and 16, block 215, and lot 10 and the west half of lot 14, block 268, Vallejo. So far as appears, the sole source of income of the family was the grocery business. The only evidence as to the then value of the grocery business was that of plaintiff, to the effect that the stock was worth not over fifteen hundred dollars, and that the business then did not amount to fifteen hundred dollars. Plaintiff was then working in the store and had been so working for some twelve years. John and William were also working in the store.

On March 12, 1891, the father, who was then confined to his bed by his last illness, with the aid of a notary public, attempted to make disposition of his property. He executed a deed of gift to his wife, conveying to her his real property, and executed what was called a bill of sale of the grocery business, according to the testimony of the notary and plaintiff, to plaintiff, for a consideration of ten dollars. This instrument was never recorded and has been lost, but the evidence is sufficient to support a conclusion that it was in part in the form of a bill of sale and that ten dollars was in fact paid by plaintiff to the father at the time. It may also be assumed that the evidence was sufficient to show that the instrument was at once delivered to plaintiff by the notary, together with the deed to the mother, although plaintiff in one place testified that it was delivered after the death of his father. According to plaintiff's testimony, there was a "memorandum" on the "bill of sale," written by the notary, being "a request that I take care of my mother and raise my brothers and sisters, and educate them to the best of my knowledge, and so far as the business would go." He further testified that "my father gave me that bill of sale with the understanding that I was to keep the family together and support them with that business," that he told me to "support my mother, edu-

cate the children, take care of them to the best of my ability with the business, what I got out of it,'' and that he thought it was placed in his name ''for the benefit of the entire family.''

Upon the death of the father a few days later, plaintiff changed the name under which the business was conducted to ''James Megarry & Co.'' It has ever since been conducted under this name, and undoubtedly plaintiff has always been at the head of the business. William and John continued to work in the store with plaintiff until they died, William dying in the year 1899 and John dying in the year 1901. In the mean time, the other brothers, Walter and Arthur, had come into the store, and continued there until Walter died in 1910.

Plaintiff married in the year 1900. Up to that time the following conditions existed, viz: All of the family lived together in the family home. None of the brothers received any salary from the business. Each of them took what money he needed for clothes, etc., from the drawer. There was never any account kept of these withdrawals. When the mother wanted any money it was given to her. There was also taken from the store such supplies as were needed for the family home. The business was apparently well and profitably managed. In 1897 the property occupied for store purposes was purchased from funds accumulated by James Megarry & Co., some six thousand dollars to eight thousand five hundred dollars being paid therefor and the title being placed in the name of the mother. Valuable improvements, costing some five thousand dollars, were added thereto, likewise from the funds of James Megarry & Co. A dwelling home for the family was also constructed at a cost of about five thousand dollars, by James Megarry & Co.

When plaintiff married he commenced and has ever since continued to take from the business fifteen dollars a week and his groceries. The remainder of the family continued to live together. Walter and Arthur took thirty-five dollars a week ''home to the family,'' and the family was provided from the store ''with everything, vegetables, meat and everything they wanted.'' No account was ever kept of these things. These conditions continued to the time of Walter's death.

Neither John nor William was ever married. No probate was had on the estate of either.

In 1901 the mother died.  On May 29, 1901, she executed a deed of trust covering the land conveyed to her by her husband and the property subsequently purchased and improved by James Megarry & Co., for the benefit of her five surviving children, each to share equally in the rents, issues, and profits for the term of ten years, and each to have an undivided one-fifth at the expiration of said ten years.  Plaintiff was one of the trustees as well as beneficiaries under the deed, and subscribed and acknowledged execution of the same.  This, it will be observed, included the real property purchased and improved for the store purposes from the funds of James Megarry & Co.  By a written statement addressed to the appraisers of the estate of Walter Megarry, deceased, plaintiff acknowledged Walter to have been the owner of an undivided one-fifth of this property, as well as of the other real property covered by the trust deed.

After the real property occupied for store purposes was acquired by purchase in 1897, no rent was paid therefor by plaintiff or any one else on account of the grocery business until the death of Walter in 1910.  But the taxes on said property, and other property of the Megarry estate, as well as all bills for improvements, etc., were paid out of the funds of James Megarry & Co.

While plaintiff was undoubtedly the active factor in the management of the business, we can see nothing in his testimony to indicate that he ever assumed at any time prior to Walter's death to be the sole owner thereof.  The bill-heads described the firm as "Jas. Megarry & Co.," and the letterheads in addition declared them to be "Grocers, Wine and Tea Merchants."  The checks were signed "James Megarry & Company by James Megarry."  The application for United States Internal Revenue licenses contained the names as members of the firm of the brothers and sisters at first, and afterward, the names of the brothers alone, the sisters having requested that their names be not attached "to a liquor license."  In some instances, plaintiff individually entered into contracts, the special instances shown being a purchase of certain store fixtures for two hundred and fifty dollars, and the contract for carpenter work on the extension added to the building on the property purchased in the name of the mother.  Everything done by plaintiff was entirely consistent with the idea

that the grocery business was purely "a family affair," and many things done were absolutely inconsistent with any other theory. Up to a very short time before the death of Walter certainly there was nothing to indicate to any of the others that plaintiff claimed to be the sole owner of the business.

A few months before the death of Walter trouble arose among the members of the family, and there was some talk of arranging a settlement as to the property. At that time, according to Mary, each of the brothers and sisters claimed one-fifth of the business, while plaintiff claimed one-half. It does not appear that at that time plaintiff did anything indicating that he claimed to own the whole of the business.

Walter died in July, 1910. A few days before his death he executed a will, subsequently admitted to probate, giving all of his property to his two sisters. Plaintiff was dissatisfied with the provisions of this will, and told his sisters that he owned absolutely the business of Jas. Megarry & Co. On August 20, 1910, he submitted to the appraisers of the estate of Walter a written statement, prepared and signed by himself, as to the firm of Jas. Megarry & Co., showing the property thereof, including fourteen thousand dollars cash, to be worth twenty-four thousand dollars, and the owners to be as follows: James Megarry one-half, Mary Megarry one-eighth, Arthur Megarry one-eighth, Lettie Megarry one-eighth and Walter Megarry, deceased, one-eighth. This statement plaintiff claims to have made in view of certain pending arrangements for a compromise between himself and his sisters and Arthur, which he then thought would result in the compromise being made. Various writings, several of which were in the handwriting of plaintiff, were in evidence, showing his acquiescence in any arrangement by which he should be given one-half of the business, while the other half was divided among the others. Owing to the advice of the attorneys for the sisters, the sisters refused to sign any agreement for a compromise. This action was commenced December 9, 1910.

We believe that we have stated the case as favorably as it can be stated for plaintiff on his own testimony, and are of the opinion that no warrant is to be found in such evidence for a conclusion that plaintiff is the sole owner of the property in question. Clearly there was never any *sale* of the business by the father to plaintiff. The transaction, as shown

by plaintiff's own testimony, was a transfer in trust for the benefit of the family, which trust plaintiff accepted and has honestly and efficiently performed, without attempted repudiation of any kind, up to the moment of Walter's death. As we have substantially said, his conduct during all these years has been entirely inconsistent with any other idea than that the business was the property of the family, and that he was managing it for the benefit of the family, including, of course, himself. Even after the death of Walter, he apparently never seriously made claim to be the absolute owner of the whole business until about the time of the commencement of this action, and this claim was apparently brought about by reason of the refusal of the others to consent to what he considered a reasonable adjustment of the respective claims in regard to this business, in view of the part he had played in making a success thereof and bringing it to its present prosperous condition. There was natural justice in plaintiff's claim that he should be given, in view of what he had done in building up the business, and the small amount he had taken therefrom by way of compensation for his work, a larger share than any of the others, and if courts were invested with the power to apportion this property in accord with their views as to what would be fair, under the circumstances, regardless of rules of law, we would unhesitatingly declare the proposed adjustment offered by plaintiff to be one that should be approved. But we cannot escape the conclusion upon the evidence before us that the surviving brother and sisters and the estate of Walter are each equally interested with plaintiff, as beneficial owners at least, in this property. It may be true that plaintiff is entitled to be awarded some compensation for his services as trustee, payable out of this property, but this is a question not presented in this proceeding and one that we do not attempt to determine. The conclusion that the plaintiff is the sole owner, free of all lawful claim by the defendants, is not supported by the evidence.

In view of our conclusion on the point discussed, we deem it unnecessary to discuss other matters suggested in the briefs.

The judgment and order denying a new trial are reversed.

Sloss, J., and Shaw, J., concurred.